BOOTH PACKING COMPANY, Plaintiff and Appellant, *v.* R. P. SOBRINO & BROTHER, Defendants and Appellees.

No. 3269. Argued June 5, 1924.—Decided March 6, 1925.

1. CONTRACT—MERCANTILE CONTRACT—DAMAGED MERCHANDISE—CONSIDERATION.— When there is a contract for the purchase and sale of preserved fruits and the seller ships merchandise unfit for human consumption the contract is without consideration and can not be enforced.

2. ID.—ID.—ID.—PERFORMANCE OF CONTRACT—DELIVERY AND ACCEPTANCE.—When there is a contract for the purchase and sale of preserved foodstuffs and the goods delivered are unfit for human consumption their acceptance by the purchaser without making objection within the period prescribed by the Code of Commerce has no effect and the seller can not recover the price.

3.—ID.—ID.—ID.—ACCEPTANCE—WAIVER.—When there is a contract for the purchase and sale of preserved foodstuffs and the seller delivers goods not fit for human consumption the purchaser does not waive his right to object to their quality by accepting delivery without complaint.

First District Court of San Juan, Charles E. Foote, J. Judgment for the defendant in an action of debt. *Affirmed.*

O. B. *Frazer* and R. *Castro Fernández* for the appellant. *M. Tous Soto* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

The opinion of the court below was as follows:

"The plaintiff substantially alleges that in or about the month of October, 1920, it entered into a commercial contract of bargain and sale with the defendant and agreed to deliver to the latter a fixed number of cans of preserved pears and peaches at the agreed price of $1.296.78; that the plaintiff complied with its obligation and shipped at Baltimore, Md., the merchandise so sold to the consignment of the defendant concern, which received it conformably in Porto Rico and accepted two drafts at thirty days' sight for the value of the goods; that upon maturity and presentment of this paper for collection, the defendant refused and continued to refuse to make payment.

"In the answer the defendant firm admits nearly all the allegations of the complaint, but, in opposition thereto and as matter of defense, contends that a few days after it received the merchandise it noted that the contents of the cans were in a fermented condition and unfit for human consumption, and almost the whole of said cans were destroyed by the employees of the local sanitation department because of their unserviceable state.

"The parties appeared at the trial together with their respective attorneys, produced their evidence, and finally submitted the case on briefs.

"After carefully studying the pleadings and the evidence the court has been able to reach the following conclusions:

"That according to the testimony of Eugene F. Thomas, witness for the plaintiff (answer to question No. 21 of the depositions), the fermentation or decomposition of the contents, if any, must have started five days after canning which was done in July, 1922.

"That there is no doubt that the goods sold became decomposed, and so true is this that they were condemned by the local sanitation department, and if the testimony of witness Thomas is to be credited, as we believe it is, the pears and peaches were unfit for consumption by human beings at the time they were shipped (nearly three months after they were canned) and therefore they could not be an object of commerce under our laws and sanitary regulations.

"That the cans of pears and peaches offered in evidence bear unmistakable signs of having been put up a long time before they were sold, since many of them have pieces of old labels under fresh labels and others are rubbed in places whence the former label had

been removed; that these facts indicated a malicious intention on. the part of the vendor company to present old and unsuitable merchandise as fresh and serviceable.

"These conclusions leave us no alternative but to decide that the contract between the parties is void *ab initio* because it lacks an object, article 50 of the Code of Commerce in its relation to sections 1228 and 1238 of the Civil Code, and not articles 336 and 342 of the Code of Commerce and the jurisprudence of our Supreme Court in the cases of Schlüter v. Fernández (30 P.R.R. 117) and Marín v. The Alps Drug Co., decided June 15, 1923, being applicable to the case, and that therefore the complaint should be dismissed with costs."

The first assignment of error is as follows:

"1.—The lower court erred in dismissing the complaint as a result of the findings of fact mentioned in its opinion."

Under this assignment the appellant attempts to show that the court only considered a part of the testimony of the expert Thomas; that the latter said not only that decomposition would be demonstrated within five days from the time the product was canned, but also that the goods were held in Baltimore for several months; that the witness examined each can before it was shipped and found it all right, and that decomposition would show itself by the swelling or bursting of the cans. The theory is that if the goods were all right when they were shipped, any consequent deterioration should be charged to the buyer. The appellant contends that the court was wrong in finding that they were shipped in a useless condition.

[1] The defendant introduced evidence tending to show that the cans when opened were unfit for consumption; that they or some of them were old goods with fresh labels and that they were condemned by the municipal sanitary authorities. If the defendant received an article that was shown to be useless, then there was a conflict in the evidence and the appellant has not convinced us that the useless state of the goods was not inherent from the moment of the can-

ning.   Given the state of these canned goods, the court had
a right to infer that the defect arose from the manner of
the canning or was otherwise inherent.   We feel bound to
hold that when cans containing fruit are shipped it is an
essential warranty of the contract that the contents should
be fit for human consumption when opened within a rea-
sonable time thereafter.   From the unfitness at the moment
of opening the court might conclude that the goods were
unfit at the time of the sale.   We can remotely imagine, of
course, that the goods, if they had not been shipped across
the ocean, might have retained their edible quality.   Then
the defendant, having bought them in Baltimore, would be
responsible for this tropical risk.   The burden, however,
would be on the complainant to show that the conditions
arose from such cause, and this it failed to do.   We do not
believe, however, that there was any likelihood that the
tropics or the ocean caused the useless state of the goods.
Assuming the honesty of the complainant, the defendant
cannot be made to pay for useless objects without value.

We transcribe the second and third assignments:

"2.—The lower court erred in not holding that the contract
was perfected and that therefore the damage to the goods was for
account of the purchaser.

"3.—The lower court erred in not holding that the special de-
fense of the defendant-appellee had prescribed pursuant to Article
336 of the Code of Commerce of Porto Rico."

Sections 50, 333 and 336 of the Code of Commerce and
1182 and 1238 of the Civil Code provide:

"Art. 50.—Commercial contracts in so far as the requisites
thereof are concerned, the modification, exception, interpretation
and extinction thereof, and the capacity of the contractors, shall
be governed, in all that is not expressly established in this code or
in special laws, by the general rules of common law."

"Art. 333.—The damages and impairment, suffered by merchan-
dise after the contract has been consummated and the vendor has
the goods at the disposal.of the purchaser in the place and at the

time agreed upon, shall be suffered by the purchaser, except in cases of carelessness or negligence on the part of the vendor.''

''Art. 336.—A purchaser who, at the time of receiving the merchandise carefully examines the same, shall have no right of action against the vendor, alleging a defect in the quantity or quality of the merchandise.

''A purchaser shall have a right of action against a vendor for defects in the quantity or quality of merchandise received in bales or packages, provided he brings his action within the four days following its receipt, and that the average is not due to accident or to the nature of the merchandise or to fraud.

''In such cases the purchaser may choose between the rescission of the contract or its fulfilment in accordance with what has been agreed upon, but always with the payment of the damages he may have suffered by reason of the defects or faults.

''The vendor may avoid this claim by demanding when making the delivery that the merchandise be examined fully by the purchaser with regard to the quantity and quality thereof.''

''Sec. 1182.—Proof of obligations devolves upon the persons claiming their fulfilment, and that of their extinction upon those opposing it.''

''Sec. 1238.—All things, even future ones, which are not out of the commerce of man, may be objects of contracts. . . . .''

[2] We conclude that the fault in these goods was not a mere question of quality, but that they were totally unfit and hence the court was right in saying that the contract lacked an object. From the standpoint of the defendant there was a total lack of consideration for his promise to pay. Under these circumstances we agree with the court below that *Schlüter* v. *Fernández,* 30 P.R.R. 117, and *Marín* v. *Alps Drug Co.,* 32 P.R.R. 51, are not applicable.

[3] The fourth assignment of error follows:

''4.—The lower court erred in not finding that the special defense of defendant, appellee, had prescribed pursuant to section 342 of the Code of Commerce of Porto Rico.''

This article presupposes a valid executed contract which we hold did not exist.

As to the admission of the certificates of the municipal

authorities as to condemnation, we are satisfied that the district court had authority to take judicial notice of the signature of the Municipal Commissioner of Health and Charities. By the same token, birth and death certificates could not be presented without proof of signature. The municipal officials are branch officers of the general government within the meaning of the law of evidence. This was the fifth assignment.

The sixth relates to the admission of evidence showing that defendant was disposed to admit the condition of the goods and accept a lower price. The court admitted the evidence, perhaps erroneously. One of the doubts we have had was whether in fact some of the goods only had not merely deteriorated, inasmuch as the defence at one time was disposed to settle. In any event the evidence of uselessness was so strong that the alleged admissions of complainant could have played no great part. The whole evidence supports the finding of the court, and we do not see how any other finding could have been made, even if this evidence of offer of compromise had not been admitted. Therefore the provisions of Section 142 of the Code of Civil Procedure should be applied, as follows:

"Sec. 142. The court must, in every state of an action, disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the parties, and no judgment shall be reversed or affected by reason of such error or defect."

The judgment must be affirmed.